Case is Packet Intelligence v. NetScout Systems, 2022-2064. This is to Lyons. Good morning, Your Honors. Mike Lyons, representing NetScout in this appeal. Your Honor, the decision here should be controlled by your outcome of the prior appeal that you just heard. Packet Intelligence cannot collect damages on all the claims that were at issue in the NetScout case were canceled in the matter that was just before you. That's all part of the decision. The cross appeal is actually irrelevant to that because that involves other claims that were not involved in the judgment in the NetScout case. The law on issue... This is governed by Presenius. Presenius and the subsequent cases that apply that same doctrine. Yes, Your Honor. There was a mandate in the prior case, right? Yes, there was, Your Honor. And most of the damages were retained? Actually, most of them were not retained, but the... Most were not? Yes. The majority of the And in the prior cases that have applied the doctrine of issue preclusion, they have explained when it would apply. And there actually isn't a dispute about the controlling cases or the standard. And that is, if the case is still pending, the effect of the invalidation of the claims in another proceeding is an immediate issue preclusive effect on all co-pending cases. And so the only question is whether this case that is now before you in the NetScout matter is pending. You say it's black and white. It's not a question of the substantiality of the issues that were remaining? Well, no. There is a question of whether it's pending and the question is whether there are any issues that were allowed. And the standard for that is undisputed. A case is pending when it's not yet final in the sense that the litigation is not entirely concluded so that the cause of action against the infringer was merged into a final judgment, one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. That's the standard. So there's any more to do than this case is pending. Now, in the Fresenius case, one of the key touchstones of whether a case was still pending was whether the scope of relief remains to be determined. And Fresenius, they said... Now, recall in that case, the appeal head in a mandate had issued resolving infringement, resolving validity, and resolving prejudgment damages in Fresenius. But it had been remanded to determine the ongoing royalty and the court said, well, the scope of relief remains to be determined. And that's been universally applied. It was applied recently in the Vernetics case where over 500 million in damages was set aside. Even though invalidity and liability had been set aside in the first mandate, the court found a subsequent invalidation would result in an issue preclusion. Now, here, during the remand, there was a 2.8 million dollar dispute over the enhancement. The original enhancement was 2.8 millions. Packet Intelligence took the position the enhancement after the remand should be 2.8 million. They said it shouldn't have changed at all. It was the position of the court that it should, by the mandate, eliminate the portion of any enhancement that relates to the damages that had been set aside. And NETSCOUT's view was that required the court to go back and look at, well, what would be the appropriate award here of enhancement based on the surviving damages and the new circumstances? And it should have looked at those factors. It felt there was a third path. So both parties disagreed with what the court actually did. The court awarded about 1.1 million. Packet Intelligence now says that was sort of the inevitable result. They fought it below. They argued it was wrong. They said you shouldn't do that proportional dispute. NETSCOUT agreed that was the incorrect approach and is now appealing that. But that wasn't the only issue that means this case was still ongoing. There also was an issue of isn't there just something fundamentally troubling about the position that you're advocating? Years ago, you lost a jury verdict. So citizens came in, did their duty, made a finding, liability, damages, case comes up on appeal. A panel of this court affirms almost all of that. And the case goes back just on these And simply because in the meantime, some third party that you all had nothing to do with gets an instituted PTAD petition. Now we are supposed to wipe out and render null and void all those prior efforts of the jury, of Judge Dillstrap, of the prior panel of this court. Isn't there something troubling about that? Well, the concern, Your Honor, is awarding damages on claims that are Well, that is also a concern. But what about the concerns I've raised? I think whenever a case, the balance that the court has struck in this, I think you're describing the issue, the finality and the interest in reaching final conclusions. But when a patent is determined by the administrative body that Congress and the Constitution is empowered to decide whether it should even have a patent, that patent is invalid. That should be respected and have effect in all other cases, certainly any case that's pending, to award damages to a plaintiff on invalid claims. The court claims that this court could affirm, as that appeal is now concluded, could affirm these are invalid claims. The one thing about patent cases is the facts are not always fully present in every single case. So the fact that a third party focused on a different prior art, they actually refer to the record that was developed in the packet intelligence case against NETSCOUT in their petition. So it could have influenced the patent office in some way. So there may not have been entirely unrelated events, even though NETSCOUT was certainly uninvolved. But I think the greater injustice would be awarding damages on claims that this court has found to be invalid. And the goal of due process is to get to the right answer. Now the fact that a jury came to one conclusion and parts of this case were affirmed, doesn't mean that it would be fair or appropriate to award damages to a party on claims that are known to be invalid, based on the art that's in front of the court. Known to be invalid, and you said a few moments ago, these claims are invalid. Not necessarily so at this point, right? They were found to be invalid by the board and it's before your honor. It'll be up to you to decide, obviously, whether you're going to affirm that ruling or not. Would you talk about that? What if we are remanding in the first appeal? You want us then to just hold this particular appeal, your appeal, in abeyance to see what happens? How would that be consistent with due process and fairness? Well, the fairness is that that is the way to ensure a just result. I mean, if you issue a stay, this will protect... Well, it's not just to the patentee who's already been waiting for years to collect on a judgment that, I remind you, has already been affirmed by this court. Well, if there is a stay that's entered and PAC Intelligence wins on its remand and its claims are not invalid, then it'll get damages that are fully bonded and it'll get them with interest. So it's not going to lose anything. If its claims are invalidated or that's confirmed in subsequent proceedings, then that's not cognizable prejudice. It shouldn't have recovered that damage in the first place. And keep in mind that PAC Intelligence has made recoveries on these patents with other parties with cases that aren't pending. I mean, they had prior cases against Cisco and Huawei and those cases aren't before you seeking to overturn those. But in this case, Netscout is in a current dispute in a pending case on patents that your honors may declare invalid. And in that circumstance, every case that's looked at this, from Presenius to XY to Vernetics most recently to Crimar, every case that's considered it, if there is an active ongoing dispute, they've given a party the benefit of an issued preclusion. And I do think it is appropriate. The outcome of one appeal would resolve another case. Here, the cases were companionized. Essentially, I think to give the court an opportunity to at least consider that path. If the federal circuit didn't want to have a case stayed on its docket during a remand to an administrative proceeding, Netscout also moved for a stay below. And it has appealed that. And so your honors could simply just reverse the court's failure to stay below and it could remand to the district court with directions to stay during the appeal. And I think the result would be fair because packet intelligence, if it wins, it gets its damages. If it loses, it's not entitled to them. But if you don't stay, there's a real chance that Netscout ends up paying damages on claims that this court ultimately finds are invalid. And I think that's certainly the greater injustice in all the potential outcomes. I have reserved time, your honor, but I'm happy to stop now if that makes sense or if you have other questions. We will save your time. Thank you, your honor. Mr. Spearmont. Thank you, your honors. May it please the court. There's something very different in terms of damages from a jury verdict that issued in 2017 and a mandate from this court issued in October of 2020, now here three years and four months after that mandate issued. But how is this case different from Fresenius? Well, unlike Fresenius, here this court did not remand for further proceedings to reconsider an injunction and to reconsider the royalty awards that were issues that were live issues that had to be remanded. Here, the only issues and what the district court found on remand and what is reality is that the only issue to be remanded was to execute this court's mandate that the portion of the enhanced damages that were tied to pre-suit damages, which were taken away for notice and marking issues. There was a reversal of the award of pre-suit damages for that reason, which is a self-executing reversal. And then this court said any enhanced damages related to those pre-suit damages that had been reversed, related there too, is what this court's mandate says. It's a lot to say it was self-executing. It doesn't look like it when you look at the district court docket following our remand. There was a lot of briefing. There was a significant opinion or two, I think. There was a real dispute in which millions of dollars were at stake. That doesn't look self-executing. Well, you're correct, Your Honor, that there was a lot of copious post-remand briefing in this case. But the only issue that was not self-executing, so to speak, was tied to the issue of what did related there too mean. And in fact, and so on remand, Packet Intelligence argued that because all of the findings of willfulness, the facts related to willfulness, happened post-suit, that the argument was on remand there were no damages. There was nothing tied to the enhancement that related to the pre-suit damages. The district court rejected that argument on remand. And this is important. In that context, NETSCOUT agreed with the district court's move that once it concludes that it does not agree with the point that because the willfulness facts were all post-suit, that all of the willfulness damages can remain. NETSCOUT argued and conceded that the way to get rid of the enhanced damages that are related to the reversed pre-suit award is to proportionally reduce the enhanced damages based on the proportion between the pre-suit damages that were taken away and the post-suit damages that remained, which is exactly what the should have been the end of story. What NETSCOUT then further did, which is what caused a year's worth of post-remand briefing, Rule 59 motions for reconsideration under Rule 59E and the like, were all insubstantial issues. Primarily, all of the post-remand litigation was about whether the court needed to re-weigh and do a complete redo of its analysis of the factors on enhanced damages. Are you contending that the entirety of what happened on remand was insubstantial? Yes, your honor. In particular, the vast majority of the remand proceedings, if not all of the remand proceedings, related to this issue of whether the read factors need to be re-weighed, which to be clear, they did not need to be re-weighed. And re-weighing the read factors, in fact, would have been a violation of the mandate rule here under Amato and Retractable Technologies precedence of this court. Because NETSCOUT did not argue, it was clearly within the scope of the judgment, the enhanced damages. NETSCOUT did not argue on appeal that the read factors had been misapplied. And even more importantly, and this is NETSCOUT in the first appeal did not argue, that if there is a reversal of the pre-suit damages, that the read factors then need to be re-weighed on remand. So the idea that a read factor re-analysis was required to happen on remand is foreclosed by the mandate rule. But wouldn't you agree that after our remand there was more for the district court to do other than simply execute the judgment? Your Honor, there wasn't more for the district court to do other than implement this court's mandate. Yeah, but that's not our test. Fresenius says that the case is not sufficiently final to be immune from subsequent developments, such as a PTAB finding that may be upheld on appeal. We don't know. Unless there is nothing for the court, that is the district court to do, but execute the judgment. And I believe that the precedent is, the only thing, that was all that was left to do here, except for other than disposing of insubstantial arguments that NETSCOUT raised on remand. Other than that, because remember, NETSCOUT agreed. We've allowed for the possibility, I think, that maybe there's an exception to this finality rule if everything on remand is insubstantial. Maybe you're right about that, but even if so, how could we find this insubstantial? You made arguments contrary to the arguments they made, and I think, help me if I'm wrong, that they prevailed on a lot of those arguments, and there was a direct financial consequence as a result. Well, the issue backwards in the sense that on remand, NETSCOUT won the argument that there should be a proportional reduction of the enhanced damages award based on the ratio between the pre-suit damages that were reversed and the post-suit damages that were affirmed on appeal. NETSCOUT won that argument. Packet Intelligence did not contest it. Final order can be entered. The only thing that was there, though, NETSCOUT made that argument. It had a financial impact on the amount of the judgment at the end of the day, correct? It did not, Your Honor, in the sense that the whole issue on remand was, the single issue on remand, everybody agrees there was nothing to dispute about the pre-suit damages are gone, right? That's what this court held, so we go back to remand. There's no debate about how the pre-suit damage is gone. They are. Then it is, what does enhanced thereto mean? NETSCOUT said enhanced thereto means that you do a proportional reduction of the enhanced damages. Court says agreed, and that's the end of the story. What did Packet Intelligence say? Packet Intelligence argued that there needed to be no reduction of the willfulness damages, of the enhanced damages, based on an argument about willfulness findings. The Packet Intelligence lost. At that point, the judgment is final. Hold on. Yes, Your Honor. There is some delta, right? You were arguing that in part, not just because you thought it was right to keep the enhancement, but there was some amount of money of additional enhanced damages that your client would have had in the amended judgment that it didn't have because NETSCOUT won that argument on this particular issue on remand, correct? Yes. On after... Right. In this situation, you've conceded, as I think you have to, that on remand, in addition to executing the judgment, there was a dispute over the amount of the enhanced damages to put into the amended final judgment. The parties briefed it. It had a financial impact on the amount of dollars that were going to end up in the final amended judgment, and NETSCOUT won that dispute. Those are the facts. How can this court say that the only issues left on remand were insubstantial? The only issues left for appeal of the remand decision were insubstantial. The issue was that there was a single dispute about how to implement this court's mandate that the enhanced damages related thereto, that the court needed to take away the pre-sue damages and any enhanced damages related thereto. On that argument, NETSCOUT argued that related thereto means do a proportional reduction, which the court did a proportional reduction in its amended final judgment. That merged into this court's mandate, and there was nothing to appeal. Packet intelligence didn't appeal. The only reason this case is still active and before this court is because NETSCOUT, after the court resolved what enhanced thereto means in NETSCOUT's favor, they raised additional collateral arguments that were outside, that violated the mandate rule and were otherwise insubstantial. In fact, this whole debate and issue about how the court implemented this court's mandate on related thereto essentially establishes or confirms that the amended final judgment should be reviewed. There was nothing that NETSCOUT argued below about implementing the mandate that was still a live contested issue. I think I understand what you're saying. I think you're right to point this out to me. The question of whether there's a substantial issue left goes to the instant appeal that you and I are talking about right now. It's a somewhat similar issue that I think you have to get over, which is the case is not final following the remand the last time around unless there's nothing for the district court to do other than execute the judgment. All the scenario that I went through with you that I put in the context of is there a substantial issue, I should have put it in the context of doesn't all of that show that there was something for the district court to do in addition to simply execute the judgment. There was something for the district court to do to implement the mandate and once implemented the mandate there was nothing further to do other than execute on the judgment. Maybe that should be the test, but our test under Fresenius is not is there anything for the district court to do beyond implement the mandate. The test is, is there anything for the district court to do other than execute the judgment. Well, I think under these facts, your honor, I think that there is the Fresenius standard about finality, which I think we're all talking about and agree with, it has to interplay in some way with the mandate rule. And in this case, specifically, the way that the Fresenius standard interacts with the mandate rule when the appellant in that case, in the prior case, gets what it asks for, such that the mandate rule, and you implement the mandate, or the mandate rule is satisfied by what the appellant asked for on remand, then in that context of Fresenius finality rule, the amended final judgment is final and there is nothing else to do but execute. There is nothing else to resolve once the district court implements this court's mandate. You suggest that you have a separation of powers argument. I'm not sure that it was well developed. What is your separation of powers argument? I think that was something that, I'm not entirely sure what the district court, I think it was a district court separation of powers issue. Our issue is mostly that finality has to matter and that for the administration of justice to be in a situation where a 2017 jury verdict, and let's remember, the 2017 jury verdict came after six PTAB petitions were filed and were all denied institution. And this is a second round, what we're talking about with the appeal that just happened before this case, that was a whole second round of petitions by other parties that had the benefit of the first PTAB rulings that denied institution and the mandate of this court issued in October of 2020. The only reason this case is still alive at the same time, the final written decisions in the subsequent PTAB round did not issue until September 2021, which was nearly a year after the mandate of this court issued that found the patents not invalid. And to have an administrative court, it's the tail wagging the dog to have the administrative procedure that has not yet been affirmed by this court. When the prior district court finding of not invalid has been affirmed by this court, it would upend all of the notions of fairness and importance of the finality rule and the and I say that I'm out of time unless your honors have anything else. Thank you, counsel. Mr. Lyons has some rebuttal time. Thank you, your honor. You know, regarding whether it's a self-executing reversal, I mean, as your honor was pointing out, there was quite a bit to do on this remand. I do want to clarify what NETSCOUT's actual position was. It, in the remand, said the enhancement should be zero. I mean, that's the position in the remand. It argued that to implement what it was required under the mandate to eliminate from the enhancement any portion associated with the prefiling damages, you needed to revisit the read factors. And the answer was that there was no enhancement. And that was the position that was advanced, and that's what's on appeal. The issue about the proportionality was, from NETSCOUT's perspective, the read factors only had gotten stronger for them. And certainly, even if the court was unwilling to reconsider or even look at any of the new developments, a ceiling on damages would be this proportional reduction. There would be no, there was no theory under which advanced by any party that it could somehow be higher than that. At no point did NETSCOUT say that was the appropriate outcome, and the district court's opinion reflects that. It says... It's on appeal in front of us right now, anything other than insubstantial. Well, first of all, there are a series of issues before you. We've been focused on enhancement. It's a $1.1 million issue about whether there should be enhancement. And I think, as we've argued in the briefing, there was no question that the district court could have revisited the read factors on this situation. Because the question of... Of course, there's at least a question. The judge applied the mandate rule and said, and I think this is right, you never separately appealed last time the enhancement for just post-trial damages, did you? We did not. And the issue is whether the district court, in the first decision it ever considered, what the enhancement should be for post-filing damages alone. And since that issue wasn't decided by the district court, it cannot be encompassed by the mandate. The court has to, in implementing the mandate, has to determine that. There also was a new event that occurred during the remand. You know, you asked about the substantiality of the issues. There's the enhancement issue. There's also the ongoing royalty, which the district court agreed needed to be changed during the remand. And that hasn't been even opposed by packet intelligence. Wouldn't that suggest it's not a substantial issue for this court on appeal? The district court did not adopt the rate that was proposed by NETSCOUT. That's being appealed, and it didn't make it effective as the date that NETSCOUT had asked that it be effective. Because you asked for it to be prospective only. Prospective as of the mandate. The issue in that... You didn't make that clear to the district court, did you? I think we did, your honor, because the issue that they raised was whether the change in the ongoing royalty was foreclosed by the mandate. And we responded to that by saying, well, this is prospective, meaning it's after the mandate in that context. What if any case law or other authority would you have us look to to determine whether your appeal in front of us right now is substantial or insubstantial? So we talked about Fresenius, which in that case the ongoing royalty issue was found to be substantial. CRIMAR actually is probably the most closely analogous because during the remand, while these issues were being addressed, the 2.8 million dollars that NETSCOUT was arguing it was entitled to, all these remand issues were going on. That's when the PTAB decision in validating the And when those PTAB decisions came down, the remand was still active. Those came down nine months or so before the district court resolved the enhancement questions that were being debated, nine months before the ongoing royalty issue was resolved. And immediately after those decisions, NETSCOUT sought judgment in its favor or at least to stay. And specifically in CRIMAR, this court said that the defendant could reasonably request the stay of the case in light of the board's decisions. We conclude that at least under present case law, there is nothing insubstantial about the defendant's argument for a stay of the case. So you've got not only the enhancement dispute, the ongoing royalty dispute, you've got a PTAB decision, motion to stay, so you have all of these pointing to the magnitude of the size of the record on remand, which is very substantial, is because of all these very substantive issues that were before the court and were being decided. And I think there also has been a lot of suggestion that the enhancement argument or the mandate somehow required this mechanical analysis. I would also say the PTAB decision was an intervening event that the mandate couldn't have foreclosed the district court from considering an event that occurred after the mandate. And so in that circumstance, we would argue that there were very substantial issues. And it looks like my time is up, Your Honor. Thank you to both counsel. The case is submitted. Thank you, Your Honor.